UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHAN H.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00525-JPH-DLP |
| ) | |
| ANDREW M. SAUL Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Jonathan H., seeks judicial review of the Social Security Administration's decision denying his petition for Disability Insurance Benefits and Supplemental Security Income. Because the ALJ failed to adequately analyze whether Plaintiff met one of the Listing impairments, the decision is **REVERSED** and **REMANDED** for further proceedings.

**I.
Facts and Background**

Plaintiff was 30 years old at the alleged onset date of his disability. Dkt. 6-2 at 23 (R. 23). He has a high school education and has held various jobs, such as a direct care worker and a personal training manager. *Id.* at 22–23 (R. 22–23). In early 2013, he was working as a motor vehicle assembler when a

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

car door fell on his leg, injuring his lower back and left hip. Dkt. 6-3 at 141 (R. 294); dkt. 6-9 at 78 (R. 864); dkt. 6-13 at 138 (R. 1434).[2]

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income in November 2016 with an alleged onset date in February 2013. Dkt. 6-2 at 62 (R. 62). Plaintiff's application was denied initially and on reconsideration. *Id.* at 15 (R. 15). Administrative Law Judge Latanya White Richards held a hearing and, on January 29, 2019, issued a decision denying Plaintiff's claims. *Id.* at 15–24 (R. 15–24). In February 2020, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g). Dkt. 1.

In her decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 6-2 at 15–24 (R. 15–24). Specifically, the ALJ found that:

- At step one, Plaintiff had not engaged in substantial gainful activity[3] since the alleged onset date. *Id.* at 18 (R. 18).

- At step two, he had "the following severe impairments: obesity; spine disorder; [and] left hip disorder." *Id.* at 18–19 (R. 18–19).

- At step three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 19 (R. 19).

- After step three but before step four, he had the residual functional capacity ("RFC") "to perform sedentary work . . . except [Plaintiff] can

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

    occasionally climb ramps and stairs but never ladders, ropes[,] or scaffolds." *Id.* at 20–22 (R. 20–22). Plaintiff can also "occasionally stoop, kneel, crawl[,] and crouch," but must "avoid exposure to unprotected heights and hazardous machinery" and "balancing on narrow, slippery[,] or moving surfaces." *Id.* Additionally, Plaintiff requires "the option to alternate positions between sitting and standing every 15 minutes" and "requires a cane for ambulation." *Id.*

- At step four, Plaintiff "is unable to perform any past relevant work." *Id.* at 22–23 (R. 22–23).

- At step five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that he can perform. *Id.* at 23–24 (R. 23–24).

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial

3

evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four

to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for steps one through four but shifts to the Commissioner at step five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
## Analysis

Plaintiff first contends that the ALJ erred at step three by not adequately analyzing whether his hip and leg impairments and difficulties with walking met or medically equaled the severity of Listing 1.02(A) (Major Dysfunction of a Joint). Dkt. 8 at 3. The Commissioner responds that the ALJ's findings were supported by substantial evidence. Dkt. 11 at 7.

### A. Plaintiff's Burden of Proof

At step three, a claimant has the burden to present medical findings that either meet an impairment described in the Social Security Administration ("SSA") Listing of Impairments or are equal in severity to the symptoms

described in a Listing. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. §§ 404.1525, 404.1526).

To be considered presumptively disabled under Listing 1.02(A), a claimant must show that a major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle) exhibits "a gross anatomical deformity," along with "joint pain," "stiffness," and "limitation of motion," which results in an "inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A). The parties dispute only whether the ALJ sufficiently analyzed Plaintiff's ability to "ambulate effectively." Dkt. 8 at 29–31; dkt. 11 at 9–10.

One can ambulate effectively if they are "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2). They must also "have the ability to travel without companion assistance to and from . . . employment." *Id.* Examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.*

At the administrative hearing, Plaintiff complained of ambulatory limitations. Dkt. 6-2 at 32 (R. 32). He noted that, "If I'm up walking, that's when the hip really starts to hurt. The thigh—the nerve damage, it's constant

6

and never ending, and of course it gets worse as I am moving . . . ." *Id.* at 48–49 (R. 48–49). Plaintiff also mentioned that he was unsure how much time he could spend walking. *Id.* at 54 (R. 54). Finally, he noted that his "son plays football and I haven't seen a game, because I can't climb the stairs to the bleachers." *Id.* at 53 (R. 53).

Medical documents also show Plaintiff's pain, stiffness, and limitation of motion in his hip joint. *E.g.*, dkt. 6-4 at 40 (R. 337) (medical records showing "chronic left hip pain"); dkt. 6-5 at 31 (R. 431) (physical therapist's evaluation of decreased range of motion). His physical therapist noted his abnormal gait and walking limitations. Dkt. 6-5 at 4 (R. 404). He also reported that he needs to stop and rest after only thirty feet of walking. Dkt. 6-3 at 99 (R. 252).

Plaintiff has thus presented evidence showing limitations on his walking pace and its effects on his daily activities.

### B. ALJ's Duty to Minimally Articulate

Once the claimant has met his burden to present medical findings, the ALJ must determine if the claimant "meets . . . a listed impairment," 20 C.F.R. § 404.1520(d), and, if not, must "compare [a claimant's] findings with . . . closely analogous listed impairments" to determine whether the claimant's "impairment(s) are at least of equal medical significance to those of a listed impairment." *Id.* § 404.1526(b)(2); *Deloney v. Saul*, No. 20-1418, 2020 WL 7260656, at *2 (7th Cir. Dec. 10, 2020) (discussing the ALJ's duty to determine whether a claimant equals a listing).

This analysis requires an ALJ to "discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Additionally, with respect to Listing 1.02(A), an ALJ must consider examples of ineffective ambulation, such as whether the claimant can "climb a few steps at a reasonable pace with the use of a single hand rail." *Moss v. Astrue*, 555 F.3d 556, 562–63 (7th Cir. 2009) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2)).

While the ALJ is not held to a high bar of articulation at step three, some level of analysis is required. *See Minnick*, 775 F.3d at 935–36. When the ALJ "provides nothing more than a superficial analysis, reversal and remand is required." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786–87 (7th Cir. 2003). For example, the Seventh Circuit has held that a two-sentence rationale that "provided no analysis whatsoever" was "inadequate" and thus reversible error. *Minnick*, 775 F.3d at 936; *cf. Zatz v. Astrue,* 346 F. App'x 107, 110 (7th Cir. 2009) (noting that, when an ALJ conducts a perfunctory analysis, "there is little basis for meaningful judicial review").

Here, the ALJ found that the claimant suffers from the "severe impairments" of "obesity; spine disorder; [and] left hip disorder" at step two. However, at step three, the ALJ explained:

> Although the claimant has the severe impairments listed above, the impairments, or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. The medical opinion

8

> of the State agency consultative physicians, all of whom considered the relevant Listings, support this finding.

Dkt. 6-2 at 19 (R. 19) (citations omitted).

Plaintiff contends that this analysis was "inadequate" and "perfunctory" and therefore requires reversal. Dkt. 8 at 28–32, 36. The Commissioner argues that the ALJ did not commit reversible error because: (1) SSR 17-2p authorized the ALJ's brief analysis; (2) the opinions of state-agency reviewing physicians constitute substantial evidence on the Listing equivalence determination; and (3) other parts of the decision support the step three finding. Dkt. 11 at 7–9.

1. *SSR 17-2p*

First, the Commissioner points to an SSA ruling instructing that, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation." *Id.* at 7–8 (citing SSR 17-2p, at *4). However, the regulations also state that the ALJ "must consider all evidence in making a finding that an individual's impairment(s) do[] not medically equal a listing." SSR 17-2p, at *4.

SSR 17-2p only sets out general articulation standards and does not contradict Seventh Circuit precedent requiring that, to determine whether "a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick*, 775 F.3d at 935 (quoting *Barnett*, 381 F.3d at 668). This requirement enables a reviewing court to "trace [the] reasoning" of an ALJ and ensure that "an ALJ considered the important evidence." *Brindisi ex rel. Brindisi*, 315 F.3d

at 787. Without the context of the applicable Listing and the evidence used to determine whether a claimant met or medically equaled it, it is difficult for a reviewing court to determine whether an ALJ has "provide[d] a 'logical bridge' between the evidence and [her] conclusions." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

  *2. Reliance on State-Agency Reviewing Physicians*

  Second, the Commissioner argues that the ALJ may solely rely on opinions of state-agency reviewing physicians in the Listing analysis. Dkt. 11 at 8. In *Scheck v. Barnhart*, the Seventh Circuit held that "[t]he ALJ may properly rely upon the opinion of . . . medical experts" as substantial evidence that no listing was met or equaled. 357 F.3d 697, 700 (7th Cir. 2004) (citing *Scott v. Sullivan*, 898 F.3d 519, 524 (7th Cir. 1990); *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). The ALJ in *Scheck* could thus acceptably provide a "terse statement," relying solely on the state-agency physicians' reports. *Id.*

  However, in *Scheck*, there was "*no evidence* which would support the position that Scheck met or equaled the listing." *Id.* at 701 (emphasis in original). That is not the case here; there is evidence that Plaintiff met or equaled Listing 1.02(A). *See Hartley v. Berryhill*, No. 1:17-cv-01043, 2018 WL 2173682, at *4 (S.D. Ind. May 10, 2018) (holding that *Scheck* is distinguishable when "the evidence presents a colorable claim that [a] Listing . . . is met"). As mentioned above, the records reflect that Plaintiff had an anatomical deformity, dkt. 6-7 at 101 (R. 659), which resulted in pain, *e.g.*, dkt. 6-2 at 46 (R. 46), stiffness, *e.g.*, dkt. 6-5 at 25 (R. 425), and limited motion, *e.g.*, dkt. 6-7 at 46

(R. 604). Plaintiff also discussed his ambulatory limitations during the administrative hearing, including his inability to climb stairs. Dkt. 6-2 at 48–49, 53, 54 (R. 48–49, 53, 54).

Nevertheless, the ALJ relied on the state-agency physicians' findings without addressing or explaining why she disagreed with Plaintiff's evidence of meeting or equaling Listing 1.02(A). Instead, she said only that "[t]he medical opinion of the State agency consultative physicians, all of whom considered the relevant Listings, support this finding." Dkt. 6-2 at 19 (R. 19).

When a Plaintiff has presented contradictory evidence to the findings of state-agency physicians, the ALJ must explain her rationale for favoring the state-agency physicians' findings over the claimant's evidence. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (finding that the ALJ's failure to "evaluate any of the evidence that potentially supported [the plaintiff's] claim does not provide much assurance that he adequately considered [the plaintiff's] case"). Since Plaintiff presented medical and testimonial evidence of meeting or equaling Listing 1.02(A), the ALJ needed to provide analysis on how and why she agreed with the state-agency physicians over the Plaintiff's evidence and testimony. *See id.*

### 3. Reading the Decision as a Whole

Finally, the Commissioner argues that the ALJ's decision, read as a whole, sufficiently justifies the determination. Dkt. 11 at 8–9. Since the five-step evaluation process "comprises sequential determinations that can involve

11

overlapping reasoning," *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020), "it is proper to read the ALJ's decision as a whole," *Rice*, 384 F.3d at 370 n.5.

But the rest of the ALJ's decision does not justify the Listing determination. The Commissioner contends that the ALJ addressed specific evidence of Plaintiff's symptoms in the next step, which examines Plaintiff's residual functional capacity, but does not mention any specific evaluation of the evidence. Dkt. 11 at 8–9. The only evidence the ALJ mentions is that "[t]he claimant requires a cane for ambulation." Dkt. 6-2 at 34 (R. 34). That is not enough to meet the ALJ's step-three burden because it does not satisfactorily address the relevant standard of Listing 1.02(A). In order for the ALJ to "minimally articulate" her justification, *Scheck*, 357 F.3d at 700, she must adequately evaluate whether the claimant can "sustain[] a reasonable walking pace over a sufficient distance," 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2), and consider the examples of ineffective ambulation, *Moss*, 555 F.3d at 562. Here, she did not do so.

Because the ALJ's decision "omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." *Rice*, 384 F.3d at 369–70.[4] The Court's remand should not be interpreted as expressing any views as to whether Plaintiff's conditions meet or medically equal a listed impairment. Instead, the remand serves only as an

---

[4] Plaintiff also contends that the decision did not properly address the impact of his obesity on his employment prospects and inappropriately assessed his testimony about his symptoms. Dkt. 8 at 2–3. Because Plaintiff's Listing argument warrants remand, this order does not address these other arguments.

instruction to provide appropriate analysis to show that proper considerations were made in resolving these issues.

### IV.
### Conclusion

For the reasons discussed above, the Court **REVERSES** and **REMANDS** the ALJ's decision denying the Plaintiff benefits.  Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/31/2021

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com